# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

TAMMY SUE DAVIS-FARLEY,       )
                              )
            Plaintiff,        )
                              )
v.                            )     Case No. CIV-16-009-RAW-KEW
                              )
NANCY A. BERRYHILL, Acting    )
Commissioner of Social        )
Security Administration,      )
                              )
            Defendant.        )

## REPORT AND RECOMMENDATION

Plaintiff Tammy Sue Davis-Farley (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on April 14, 1969 and was 46 years old at the time of the ALJ's latest decision. Claimant completed her high school education. She also completed her certified nurse's assistant's ("CNA") certification. Claimant has worked in the past as a CNA and hand packager. Claimant alleges an inability to work beginning February 15, 2011 due to limitations resulting from high blood pressure, ganglion arthropathy, moderate obesity, sleep apnea,

anxiety, depression, gout, and neck and back pain.

## Procedural History

On March 17, 2011, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On December 19, 2012, Administrative Law Judge Doug Gabbard, II ("ALJ") conducted a hearing by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding in McAlester, Oklahoma. On January 25, 2013, the ALJ issued an unfavorable decision. On March 21, 2014, the Appeals Council denied review of the decision. The decision was appealed to this Court. On November 13, 2014, Defendant moved to remand this case. On November 21, 2014, this Court reversed the decision and remanded the case for further proceedings.

On September 22, 2015, a second hearing was conducted by ALJ John Belcher by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding in Tulsa, Oklahoma. On November 9, 2015, the ALJ entered a second unfavorable decision. No action was taken to seek review by the Appeals Council. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.984, 416.1484.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform sedentary work with limitations for the closed period from April 1, 2011 through May 19, 2013.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) making an improper RFC determination; and (2) reaching erroneous findings at step five.

**RFC Assessment**

In his decision, the ALJ determined Claimant suffered from the severe impairments of morbid obesity, gout, depression and anxiety for the period from April 1, 2011 through May 19, 2013. (Tr. 953).[2] The ALJ concluded that Claimant retained the RFC to perform sedentary work. In so doing, the ALJ found Claimant could not lift/carry more than 20 pounds occasionally and ten pounds frequently, with pushing and pulling limitations consistent with the lifting/carrying limits. Claimant was able to stand for six hours out of an eight hour workday and stand for forty-five minutes at a

---

[2] This appeal is limited to this closed period. Defendant issued a fully favorable decision on July 3, 2014 finding Claimant to be disabled beginning on May 20, 2013.

time. She was able to sit for six to eight hours in an eight hour workday and sit for two hours at a time. Claimant was occasionally able to climb, balance, bend or stoop, kneel, crouch, and crawl. Claimant was frequently able to use her arms for reaching, bilaterally and she was frequently able to use her hands for fingering, handling, and feeling, bilaterally. Claimant was limited to simple, routine tasks and some complex tasks allowing semi-skilled work. She was able to have superficial contact with co-workers and supervisors. Claimant was able to have occasionally superficial contact with the public. (Tr. 958).

After consulting with a vocational expert, the ALJ concluded Claimant could not perform her past relevant work but that she could perform the representative jobs of document scanner, electronics worker, and semi-conductor bonder, all of which the ALJ concluded existed in sufficient numbers both regionally and nationally. (Tr. 969). As a result, the ALJ found Claimant was not disabled from April 1, 2011 through May 19, 2013. (Tr. 970).

Claimant first contends the ALJ should have found her sleep apnea, hypertension, gastrointestinal problems, degenerative disc disease, heel spurs, and leg pain to be severe impairments. Because the ALJ did find that Claimant had severe impairments, any failure to find Claimant's additional impairments severe at step two is

6

considered harmless error because the ALJ would nevertheless be required to consider the effects of these impairments and account for them in formulating Claimant's RFC at step four. See, e.g., Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [Claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.'"), quoting Langley v. Barnhart, 373 F.3d 1116, 1123-24 (10th Cir. 2004) and 20 C.F.R. § 404.1523. See also Hill v. Astrue, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.' ") [emphasis in original] [citations

7

omitted].

Here, the ALJ considered the effect of these conditions and determined they created no more than a minimal effect upon Claimant's ability to engage in basic work activities. (Tr. 953-55). The record supports this finding. (Tr. 249, 262, 360-61, 741-42, 748, 769-70, 793, 821, 830, 836, 854, 862, 903, 905, 997, 1236, 1239, 1309, 1319). The ALJ's consideration of these conditions was not error.

Claimant next asserts that the ALJ improperly evaluated the opinion evidence. Dr. Rick L. Robbins was Claimant's primary treating physician since September 24, 2008. (Tr. 961). On September 14, 2011, Dr. Robbins completed a medical source statement on Claimant. He concluded Claimant could occasionally and frequently lift/carry less than ten pounds, could stand/walk for less than two hours in an eight hour workday, could sit for less than about six hours in an eight hour workday, must periodically alternate between sitting and standing, and was limited in both the upper and lower extremities. Her back pain is worse with lifting, bending, pushing, pulling, and other activity. She was not able to walk more than one block before she becomes short of breath. Claimant was only able to ride in a car for a short duration without pain. She sits at one time one hour then lies down. She complains

8

of hip, back, knee, and foot pain. She was found to be obese. Dr. Robbins determined Claimant could never climb, kneel, crouch, or crawl and could only occasionally balance. Claimant's ability to handle, finger, and feel was limited due to knumbness and probable carpal tunnel with the right hand being worse than the left. Claimant also had limited ability to tolerate exposure to temperature extremes, dust, humidity/wetness, and hazards. (Tr. 418-20).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The

9

factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ concluded that Dr. Robbins' opinion was unsupported by his treatment records. He found Claimant had not complained of or

10

been evaluated for carpal tunnel. He considered Claimant's obesity in reaching the RFC. The ALJ determined that x-rays fo the spine, hips, left femur, right knee, and left heel did not show objective impairment to the degree found by Dr. Robbins which would preclude even sedentary work. He found Dr. Krishnamurthi's testimony and Dr. Schatzman's physical examination to contradict Dr. Robbins' findings. He accorded Dr. Robbins' opinion "little weight." (Tr. 962).

Claimant contends the medical record does support Dr. Robbins' findings. She cites in the record to MRI results which show mild degenerative changes at C4-5 and degenerative thoracolumbar disc disease with no acute disease. (Tr. 249, 362). Additionally, nothing in the record cited or Dr. Robbins' treatment records suggest the level of limitation set forth in Dr. Robbins' opinion. (Tr. 339, 807, 822, 922, 936-38, 941). Indeed, while Claimant suffered from heel spurs and Achilles tendonitis, she had full range of motion in her knees. (Tr. 936-38). The ALJ's discounting of Dr. Robbins' opinion was warranted and supported by the greater record.

Claimant next contends the ALJ improperly evaluated the opinion of Dr. Steven Dalia, Claimant's treating psychiatrist. On October 12, 2011, Dr. Dalia completed a mental medical source statement on Claimant. He determined Claimant had severe limitations in the functional areas of the ability to maintain attention and

11

concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to work in coordination with or proximity to others without being distracted by them; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonably number and length of rest periods; ability to accept instructions and respond appropriately to criticism from supervisors; ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and the ability to respond appropriately to changes in the work setting. (Tr. 421-23).

He also found marked limitations in the areas of the ability to remember locations and work-like procedures; the ability to understand and remember very short and simple instructions; the ability to understand and remember detailed instructions; the ability to carry out very short and simple instructions; ability to carry out detailed instructions; ability to make simple work-related decisions; ability to interact appropriately with the general public; ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; ability to travel in unfamiliar places or use public transportation; and ability to set realistic goals or make plans independently of

others.  Id.

In his narrative notes, Dr. Dalia stated Claimant suffers from severe depression with phobia of public places and fear of crowds. She exhibits a fear of dying and going crazy along with feelings of nervousness and anxiousness.  He found Claimant is unable to concentrate and follow directions due to constant worrying about things.  She was troubled by painful memories of being abused.  She felt people are stalking her and she hears voices.  She had great difficulty controlling her temper and has frequent outbursts of anger.  Dr. Dalia opined that Claimant was severely limited in the ability to perform basic work functions.  (Tr. 424).

The ALJ found Dr. Dalia only treated Claimant briefly - a total of four times.  He concluded that Dr. Dalia's treatment record and the medical record as a whole did not support his findings of limitation.  He afforded the opinion "little weight" because it was in conflict with the state agency psychiatric findings.  (Tr. 965).

The problem with the ALJ's analysis is her relies upon the agency psychiatric sources to conclude that Dr. Dalia exaggerated the level of limitation from which Claimant suffers.  The two reports, however, to which he affords superior weight to Dr. Dalia's opinion - those of Dr. Ros Burrows (Tr. 743-45) and Dr. Diane Brandmiller (Tr. 366-70) - do not contain any findings of function ability and largely support Dr. Dalia's mental status findings.

13

Moreover, four treatment visits cannot be said to lack longitudinal support.  The ALJ shall re-examine Dr. Dalia's report and opinion in light of the entirety of Claimant's mental health record.  Should further consultative and functional evaluation be necessary, the ALJ shall obtain the required reports in order to clarify the record.

### Step Five Evaluation

Claimant contends the hypothetical questioning of the vocational expert lacked the totality of Claimant's limitations.  Since re-evaluation of Claimant's mental limitations will be required, the ALJ shall also modify his questions posed to the vocational expert in order to accurately represent Claimant's functional restrictions as set forth in an RFC.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied.  Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED** and the case be **REMANDED** for further proceedings.  The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and

Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 13th day of March, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE